1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BETHANY R. NOTTER,

               Plaintiff,

    v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

               Defendant.

CASE NO.     C06-5558FDB-KLS

REPORT AND
RECOMMENDATION

Noted for August 24, 2007

     Plaintiff, Bethany R. Notter, has brought this matter for judicial review of the denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

     Plaintiff currently is 33 years old.[2] Tr. 60.  She has a college education and past work experience as

---

    [1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

    [2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1   a nursing assistant, tutor, daycare worker, personal care giver, office clerk, bus driver, fast food worker,

2   hotel desk clerk, and telemarketer. Tr. 27, 102, 107, 133, 151.

3       On May 21, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as

4   of November 1, 2001, due to diabetes, asthma, adrenal insufficiency, hydrocephalus, allergies, and

5   depression. Tr. 90-92, 101.  Her application was denied initially and on reconsideration. Tr. 60-62, 68.  A

6   hearing was held before an administrative law judge ("ALJ") on October 12, 2005, at which plaintiff,

7   represented by counsel, appeared and testified, as did a vocational expert. Tr. 30-59.

8       On March 28, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding

9   specifically in relevant part:

10      (1)     at step one of the sequential disability evaluation process,[3] plaintiff had not
                engaged in substantial gainful activity since her alleged onset date of disability;

11

12      (2)     at step two, plaintiff had "severe" impairments consisting of asthma,
                musculoskeletal sprains and strains, obesity, and a depressive disorder;

13      (3)     at step three, none of plaintiff's impairments met or equaled the criteria of any of
                those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

14

15      (4)     at step four, plaintiff had the residual functional capacity to perform a modified
                range of sedentary work, which did not preclude her from performing her past
                relevant work as a data entry clerk and telemarketer; and

16

17      (5)     in the alternative, at step five, plaintiff was capable of performing other jobs
                existing in significant numbers in the national economy.

18  Tr. 28-29.  Plaintiff's request for review was denied by the Appeals Council on September 8, 2006, making

19  the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981.

20      On September 26, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's

21  decision. (Dkt. #1-#3).  Specifically, plaintiff argues that decision should be reversed and remanded for an

22  award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

23      (a)     the ALJ erred in evaluating the medical evidence in the record;

24      (b)     the ALJ erred in failing to consider all of plaintiff's severe impairments;

25      (c)     the ALJ erred in finding that plaintiff's mental impairments did not meet or equal
                the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04;

26

27  ─────────────

28      [3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.
    See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the
    disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

(d)     the ALJ erred in assessing plaintiff's credibility;

(e)     the ALJ erred in assessing plaintiff's residual functional capacity;

(f)     the ALJ erred in finding plaintiff capable of performing her past relevant work; and

(g)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

In addition, plaintiff argues that if this matter is remanded for a new hearing, the Court should order the Commissioner to assign it to a different ALJ.

For the reasons set forth below, however, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed. Further, while plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Analysis of the Medical Evidence of the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact

1  inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

2  "falls within this responsibility." Id. at 603.

3        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

4  supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a

5  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

6  thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."

7  Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the

8  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

9        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

10 either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

11 treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

12 legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the

13 ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739

14 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain

15 why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07

16 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

17       In general, more weight is given to a treating physician's opinion than to the opinions of those who

18 do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

19 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

20 "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

21 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

22 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

23 opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

24 constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-

25 31; Tonapetyan, 242 F.3d at 1149.

26       A.    Mr. Overton

27       Plaintiff argues the ALJ erred in failing to mention an August 13, 2003 letter from David Overton,

28 PA-C, his treating provider.  In that letter, Mr. Overton stated in relevant part as follows:

. . . I believe that hypothalamic-pituitary dysfunction is affecting her asthma and adrenal gland functioning.  She also has immune system dysfunction, and gets sick frequently due to infections, multiple allergies, multiple food sensitivities, chemical exposures and asthma.

. . . I believe her increased intracranial pressure and abnormal cerebrospinal fluid affects her hypothalamus, pituitary and adrenal gland functioning.

Prescription medicines . . . control her asthma to a point.  Prednisone (a steroid) is used to decrease inflammation of her bronchial tubes when she is having severe asthma symptoms.  However, steroids can further compromise the hypothalamic-pituitary-adrenal axis . . . Steroids typically suppress adrenal and pituitary function.  This can further suppress her already compromised hypothalamic and pituitary gland functioning.

Stress is also a known contributor to Bethany's asthma . . .

. . . She also has multiple chemical sensitivities that trigger asthma attacks and limit the type of environment she can work in.  Stress will also [sic] adrenal gland functioning and alter cortisol levels and leave less cortisol to reduce inflammation in her lungs.

Tr. 331-32.   Plaintiff does not explain why she views this evidence as being important or why it was error for the ALJ to fail to mention it. See Vincent, 739 F.3d at 1394-95 (ALJ need only explain why significant probative evidence has been rejected).

Nevertheless, the undersigned finds it was error for the ALJ to have failed to mention this evidence in his decision.  While Mr. Overton did treat plaintiff, he is not an "acceptable medical source" as that term is defined in the Social Security Regulations, and thus his opinion may be given less weight than those of acceptable medical sources, such as licensed physicians and psychologists. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d).  Rather, opinions from non-acceptable medical sources such as Mr. Overton generally are treated the same as testimony of lay witnesses. See 20 C.F.R. § 404.1513(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work).

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  In rejecting lay testimony, however, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.  It is clear though, that the ALJ

1  must provide some reason for rejecting lay testimony.  He did not do so here with respect to the August 13,

2  2003 letter provided by Mr. Overton.

3  　　　　Because Mr. Overton did discuss in some sense the effect plaintiff's multiple chemical sensitivities

4  and asthma attacks had on her ability to do work-related activities, the undersigned cannot say the August

5  13, 2003 letter lacked any significant probative value.  For example, Mr. Overton stated these conditions

6  did "limit the type of environment" in which she could work.  Tr. 331.  In this sense then, the ALJ's failure

7  to mention this evidence constituted error, but it was harmless error.  An error will be deemed harmless only

8  if it is "inconsequential" or non-prejudicial to the ALJ's "ultimate nondisability determination."  Stout v.

9  Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  "[W]here the ALJ's error lies

10  in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

11  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

12  the testimony, could have reached a different disability determination."  Id. at 1056.

13  　　　　Such is the case here.  As just discussed, the only statement made by Mr. Overton in his August 13,

14  2003 letter that directly relates to plaintiff's ability to do work-related activities is his statement that her

15  multiple chemical sensitivities and asthma attacks would limit the type of environment in which she could

16  work.  All of the other statements made by Mr. Overton set forth above merely discuss the conditions he

17  found afflicted plaintiff, without any reference to her ability to work.  This is not enough, however, as the

18  mere existence of an impairment, or symptoms thereof, "is insufficient proof of a disability."  Matthews v.

19  Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Further, the ALJ's assessment of plaintiff's residual functional

20  capacity, discussed below, took into account such environmental limitations.  See Tr. 27, 29.

21  　　　　B.　　　Dr. Regets

22  　　　　Charles M. Regets, Ph.D., completed a psychological/psychiatric evaluation form, dated August 19,

23  2003, in which he diagnosed plaintiff with "[m]ajor depression secondary to physical illness."  Tr. 478.  Dr.

24  Regets also found plaintiff to be markedly limited in her ability to respond appropriately to and tolerate the

25  pressures and expectations of a normal work setting. Tr. 479.  Plaintiff asserts the ALJ erred by completely

26  failing to mention this limitation and the diagnosis of major depression.

27  　　　　This assertion is incorrect, as the ALJ clearly mentioned (though not by name) both the diagnosis of

28  depression provided in the evaluation form completed by Dr. Regets, and the "marked restriction handling

work stresses" contained therein. See Tr. 25 (citing to exhibit 14F).  Further, the undersigned finds the ALJ

did not err in declining to give the evaluation much weight on the basis that it had been "prepared without

significant clinical findings." See Tr. 25, 479.

C.      Dr. Ranheim

Philip Ranheim, M.D., examined plaintiff in late June 2004, finding her to be in no acute distress,

with clear lungs and "grossly intact" neurological processes. Tr. 660.  However, he diagnosed plaintiff with

a number of medical conditions, including allergies, moderately severe asthma, fatigue, and "[a]pparent"

adrenal insufficiency. Tr. 659-60.  Dr. Ranheim also provided the following discussion:

> [T]his is an exceedingly complex patient with indwelling shunt, brain tumor, endocrine
> and immune dysfunction, multiple allergies and sensitivities, and probable undernutrition.
> Sensitivities include food, gluten, chemicals, inhalants, nickel, and possibly other items.
> The high dose of steroid between oral capsules and sprays his [sic] of concern.
> Controlled environments, improved nutrition, correction of endocrinopathies, and
> desensitization make sense.

Id.  The ALJ addressed Dr. Ranheim's opinion as follows:

> In June 2004 the claimant met with Philip Ranheim, M.D., for multiple complaints,
> extensive allergies, and reactions to environmental exposures (exhibit 24F:9-10).  Dr.
> Ranheim diagnosed a series of allergies and asthma; her examination was not particularly
> remarkable (exhibit 24F:8).  Dr. Ranheim thought that she had some type of endocrine
> or immune system condition, and some type or [sic] malnutrition, and he continued to
> treat the claimant with various dietary and supplement approaches (exhibit 24F).  These
> reports are considered, but they appear to be based on non-traditional techniques and
> were not particularly informative.

Tr. 23.  Plaintiff argues the ALJ's rejection of Dr. Ranheim's opinion for the reason that it appeared to be

based on non-traditional techniques was not legitimate.

Were this the only reason the ALJ provided for rejecting Dr. Ranheim's opinion and report, the

undersigned might agree.  As clearly can be seen, however, the ALJ also found that opinion and report to be

"not particularly informative" and plaintiff's examination to be "not particularly remarkable."  In so finding,

the ALJ did provide a valid basis for rejecting Ranheim's findings.  The physical examination performed by

Dr. Ranheim failed to produce any significant objective medical findings. See Tr. 660.  In addition, Dr.

Ranheim's opinion and report offers no light on plaintiff's ability to perform work-related activities or how

her impairments and symptoms affect those activities.

D.      Dr. Graf

Plaintiff underwent an examination in early January 2005, by Ronald J. Graf, M.D, who diagnosed

her with "[h]ypothalamic dysfunction secondary to arachnoid cyst with secondary hypogonadism and

secondary hypothyroidism, treated," type 2 diabetes mellitus, with uncontrolled diet, a history of asthma, hypertension, and depression. Tr. 652.  Dr. Graf further found that plaintiff's thyroid hormone levels were normal, that the fact that she did not feel any different with the addition of prednisone suggested adrenal insufficiency was "probably not significant," and that her "failure to show clinical response to prednisone therapy" suggested she was "not suffering from adrenal insufficiency" at the time. Id.

In his decision, the ALJ found Dr. Graf's belief that plaintiff did not have adrenal insufficiency, supported a determination that her endocrine problems were "not severe." Tr. 24.  Plaintiff suggests this finding was improper, because Dr. Graf diagnosed her with "[h]ypothalamic dysfunction secondary to arachnoid cyst with secondary hypogonadism and secondary hypothyroidism." Plaintiff's Opening Brief, p. 17.  The undersigned will assume plaintiff inadvertently failed to mention the fact that Dr. Graf further qualified this diagnosis by adding the word "treated." Tr. 652.  Plaintiff's suggestion, therefore, carries no weight.  In any event, Dr. Graf's other statements, as set forth above, clearly show he did not feel plaintiff's adrenal insufficiency to be a significant factor for her.  The ALJ thus did not err here.

E.    Dr. Wingate

In late July 2004, Terilee Wingate, Ph.D., completed a psychological/psychiatric evaluation form, in which she diagnosed plaintiff with a major depressive disorder secondary to physical condition and a probable cognitive disorder. Tr. 506.  Dr. Wingate further found plaintiff to be markedly limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 507.  The ALJ rejected this marked finding on the basis that the mental status examination of plaintiff Dr. Wingate performed was "fully intact," which did not support such a finding. Tr. 23.  Plaintiff argues this was not a legitimate reason for rejecting Dr. Wingate's opinion.

The undersigned finds plaintiff's argument to be without merit for two reasons.  First and foremost, plaintiff's argument is not in fact an argument.  She merely presents her objection to the ALJ's finding, but offers no reasons whatsoever as to why the Court should agree with her.  Needless to say, this is wholly insufficient for purposes of judicial review.  Second, an ALJ need not accept an opinion, even that of a treating physician, if it is inadequately supported by clinical findings. Batson, 359 F.3d at 1195; see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between physician's functional assessment and his or her clinical notes, recorded observations and other comments regarding claimant's

1  capabilities is clear and convincing reason for not relying on such assessment).  As such, the ALJ did not err

2  here in noting the mental status examination's benign findings.  See Tr. 507.

3      F.    Dr. Trowbridge

4      In early September 2005, Brett C. Trowbridge, Ph.D., also completed a psychological/psychiatric

5  evaluation form, in which he diagnosed plaintiff with dysthymia, secondary to physical problems, and an

6  organic brain syndrome by history. Tr. 513.  He found plaintiff to be markedly impaired in her ability to:

7  exercise judgment and make decisions; perform routine tasks; interact appropriately in public contacts;

8  respond appropriately to and tolerate the pressures and expectations of a normal work setting; care for

9  herself; control her physical or motor movements; and maintain appropriate behavior. Tr. 514.  The ALJ

10  gave the following reasons for rejecting Dr. Trowbridge's findings:

11      In September 2005 the claimant was seen by Brett Trowbridge, Ph.D., who diagnosed
      dysthymia and an organic brain syndrome, with rule-out bipolar disorder.  He thought
12      that she had marked social limitations and some marked cognitive difficulty as well
      (exhibit 19F), although he did not find memory problems to the degree noted by Dr.
13      Wingate (exhibits 18F:1; 19F:1).  The basis for this assessment is uncertain, and it is
      given scant weight as further discussed below. . . .
14
      . . . [T]he psychological evaluations vary substantially.  Dr. [Richard] Price[, M.D.]
15      found only a mild mental impairment (exhibit 15F); Dr. Wingate found a major
      depressive disorder and possible cognitive disorder causing moderate to marked
16      limitations (exhibit 18F).  Dr. Trowbridge thought that the claimant had dysthymia and
      an organic brain syndrome causing marked limitations (exhibit 19F).  The report by Dr.
17      Price is the most comprehensive evaluation in the file and it is given significant weight.
      The assessments by Dr. Wingate and Dr. Trowbridge are given less weight.  They relied
18      largely on the claimant's recitation of physical issues and noted that the claimant's
      physical condition was a major component and force in her mental state.  However, the
19      claimant clearly exaggerates her physical condition. . . .

20  Tr. 24, 26-27.

21      Plaintiff argues it was not legitimate for the ALJ to reject Dr. Trowbridge's findings for the reasons

22  that Dr. Trowbridge "relied largely" on plaintiff's "recitation of physical issues" and that plaintiff "clearly"

23  exaggerated her physical condition.  Once again, plaintiff fails to set forth any specific reasons as to why

24  these were not legitimate reasons for rejecting Dr. Trowbridge's findings or why the undersigned should

25  find error here.  For that reason alone, the undersigned rejects plaintiff's argument.  In addition, while the

26  ALJ fails to point to evidence in the record showing plaintiff "clearly" exaggerated her physical condition,

27  as explained below, the ALJ did not err in discounting her credibility. See Tonapetyan, 242 F.3d at 1149

28  (medical opinion premised on claimant's complaints may be disregarded where record supports ALJ in

REPORT AND RECOMMENDATION
Page - 9

discounting claimant's credibility); <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).

It certainly appears, furthermore, that Dr. Trowbridge did rely largely on plaintiff's physical condition and her own report thereof.  For example, while he diagnosed plaintiff as having dysthymia, this was only secondary to her physical problems. Tr. 513.  The mental status examination performed by Dr. Trowbridge also was fairly unremarkable. <u>See</u> Tr. 514.  In addition, as found by the ALJ above, Dr. Trowbridge was not the only examining psychologist to find plaintiff's mental issues to be only secondary to her physical condition. <u>See</u> Tr. 506.  That is, Dr. Wingate opined as to this as well, commenting specifically that "[h]er physical condition" was "a driving force on her depression." Tr. 508.  This bolsters the ALJ's position that plaintiff's issues, as presented to Drs. Wingate and Trowbridge, were more physical than mental; issues that, as psychologists, they were not in a proper position to evaluate.

In addition, where the opinion of an examining physician is based on independent clinical findings, it is well within the ALJ's discretion to disregard the conflicting opinion in another examining physician's diagnosis. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  Here, the ALJ compared the opinions of Dr. Wingate and Dr. Trowbridge to that of Dr. Price, and found the latter's more convincing.  As all three were based on independent evaluations of plaintiff, this was proper. <u>See</u> Tr. 481-84.  Indeed, in contrast to the marked mental functional findings made by Drs. Wingate and Trowbridge, Dr. Price, as the ALJ noted, found plaintiff to have only a mild depressive disorder. Tr. 483.  He too found plaintiff's problems to have been largely due to physical, as opposed to mental, factors. <u>See</u> Tr. 483-84.  While Dr. Price did conclude plaintiff would have some limitations, those noted appear to be far less severe. <u>See</u> Tr. 484.

G.   <u>Dr. Price</u>

As just discussed, plaintiff was evaluated by Dr. Price in late August 2003.  In addition to a mild depressive disorder, he diagnosed plaintiff with a "[s]leep disorder due to panypopituitarism" and a global assessment of functioning ("GAF") score of 60-65, indicating only "mild to moderate difficulty with occupational functioning." Tr. 483.  The mental status evaluation conducted by Dr. Price also was fairly unremarkable. Tr. 482-83.  In terms of prognosis, he opined in relevant part as follows:

> The claimant's primary problem is almost certainly that of her pituitary disfunction secondary to the cyst of the brain, which has been successfully operated on. . . . Often mood instability, and fairly commonly hypersomnia can be associated with pituitary problems.  I expect that her symptoms for a large part are due to this physical problem.

> She is a very intelligent and personable young lady, but is probably handicapped in finding employment by her obesity, which too is probably related to her pituitary disorder. . . . I would not expect a great deal of improvement from its current level over the next 12 months. While I am sure there are many limitations to her employment due to her problems, she is quite intelligent. If she were able to obtain education to the point where she could work somewhat independently, such as in the field of social work consulting, she probably would do well. She will almost certainly need assistance to achieve that graduate level of education.

Tr. 483-84. Dr. Price concluded with the following functional assessment:

> The claimant is capable of managing her funds independently. The claimant has the ability to perform simple and repetitive tasks as well as detailed and complex tasks. I suspect she could to [sic] well accepting instructions from supervisors and interacting with coworkers and the public. I suspect that her health may not be sufficient to be able to be consistent in the work place. The possibility of not being able to complete a normal workday or workweek without interruptions from her condition is real. However, the problems would be primarily medical rather than psychiatric.

Tr. 484.

> With respect to Dr. Price's opinion, the ALJ found as follows:

> Dr. Price thought that the claimant's pituitary dysfunction was her main difficulty. There were "many limitations to her employment due to her problems," but the only limitation he identified was difficulty with consistency in the workplace, and completing a normal workday and workweek. But that was apparently based on medical problems (probably obesity, from the tone of his report), not from a psychiatric condition (exhibit 15F:4). That report is considered, but these comments are not consistent with the GAF rating and mental status testing. Dr. Price's report is given pretty substantial weight, but his assessment of the affects [sic] of physical disorders are outside his area of expertise and are not considered as more than lay reporting.

Tr. 23. As noted above, the ALJ also found Dr. Price's opinion to be "the most comprehensive evaluation" in the record, and thus gave it "significant weight." Tr. 27. Plaintiff argues this last finding concerning Dr. Price's lack of expertise in assessing the effects of physical disorders was not a legitimate reason to reject his opinion that she may not be able to complete a normal workday and workweek, as such assessments are well within the expertise of psychiatrists.

The undersigned agrees that psychiatrists, as medical doctors, do have the expertise with which to assess both physical and mental impairments, and, indeed, because of that medical training, may well be able to better assess the interplay of a claimant's physical and mental issues than others. This reason alone, therefore, does not constitute a sufficient basis on which to discount the opinion of an examining medical source such as Dr. Price. As such, the ALJ erred in doing so. On the other hand, the ALJ provided other, valid reasons for rejecting Dr. Price's opinion regarding the possibility that plaintiff might not be able to complete a normal workday and workweek.

1    As noted by the ALJ, the mental status examination was unremarkable, and Dr. Price gave her an

2    overall GAF score indicative of only mild to moderate difficulties.  Accordingly, the undersigned cannot say

3    the ALJ was wrong in finding little or no objective clinical findings in Dr. Price's evaluation to support his

4    opinion regarding plaintiff's ability to complete a normal workday and workweek.  Indeed, Dr. Price's

5    opinion on this issue was much more qualified than plaintiff made it out to be.  That is, Dr. Price opined

6    only that there was a "possibility" she would be unable to do so.  Given the benign findings contained in Dr.

7    Price's evaluation, the ALJ did not err in rejecting that functional assessment.

8         H.    Other Medical Evidence

9    Plaintiff raises additional objections to the ALJ's evaluation of the medical evidence in the record,

10   none of which, as explained below, have any merit.  For example, plaintiff argues the ALJ erred in failing to

11   mention a document in the record indicating a Dr. Sandifer had treated her 35 times between March and

12   July 2005. See Tr. 708.  Plaintiff, however, makes no showing as to what light, if any, this sheds on her

13   mental or physical impairments, symptoms thereof, or the impact of those impairments and symptoms on

14   her ability to perform work-related activities.  Indeed, the undersigned finds that notation in the record to be

15   of essentially no value in helping the Court assess the propriety of the ALJ's determination, and thus no

16   relevance to the issue of plaintiff's alleged disability.

17   Along the same vein, plaintiff asserts the ALJ also erred in failing to "explicitly acknowledge" that

18   she had been treated in the emergency room 32 separate times between November 2002 and July 2005. See

19   Plaintiff's Opening Brief, p. 16 (citing to Tr. 410-64, 595-640).  Again, merely because a claimant may have

20   been treated on a number of occasions by a medical provider, even when such treatment occurs in the

21   emergency room, does not alone constitute evidence of significant work-related impairments or symptoms.

22   Rather, the claimant also must present objective medical evidence of such impairments or symptoms.

23   Indeed, as expressly noted by the ALJ, plaintiff's emergency room visits clearly show that while she had

24   been seen for "acute exacerbations of asthma and ongoing multiple myalgias," any significant objective

25   clinical findings "were absent or minimal" (Tr. 24), or her symptoms quickly resolved prior to discharge

26   (see, e.g. Tr. 410-11, 415, 417-18, 421, 423-28, 435-36, 440-41, 444, 446, 449-50, 452-53, 459, 462-64).

27   Lastly, plaintiff argues the ALJ inaccurately summarized some of her medical records concerning her

28   diagnosis of depression.  First, plaintiff asserts the ALJ erred in finding that her "multiple examinations after

the alleged onset date [of disability] did not show any signs or symptoms of depression," and that she did not seek treatment for depression prior to July 2004. Tr. 23. While the medical evidence in the record is mixed concerning the nature and severity of plaintiff's depression-related symptoms, it does show that at least some signs of that condition have been present. See, e.g. Tr. 479-80, 483, 507, 514, 521, 529-30, 536, 546, 551, 558, 562, 571, 576, 578, 580-81, 584, 587-93. It also appears that plaintiff was diagnosed with depression prior to July 2004, and prescribed medication therefore. See Tr. 346.

Once again, however, plaintiff fails to point out the relevance of the ALJ inaccurately summarizing the medical evidence concerning her depression in the manner described above. That is, she has not shown how the fact that she had signs and symptoms of depression, and that she was diagnosed and received some treatment for that condition prior to July 2004, is indicative of or demonstrates that she had any significant work-related limitations stemming therefrom. Plaintiff further argues the ALJ also failed to acknowledge that she began a three-day hospital stay for mental health issues in late July, 2004. See Tr. 589. However, for the same reasons noted previously in this paragraph, this argument lacks merit as well.

II.      The ALJ's Step Two Analysis

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her[his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff's asthma, musculoskeletal sprains and strains, obesity, and depressive disorder to be severe impairments. Tr. 21, 28. The ALJ also found that while other symptoms

and conditions appeared in the record from time to time, "they were no more than transient or did not cause

significant limitations," and thus were not severe. Tr. 21.  Plaintiff asserts the ALJ erred in failing to find her

hypothalamic-pituitary dysfunction, immune system dysfunction, chemical sensitivities, allergies, sleep

disorder, fatigue, and migraine headaches to be severe.

Plaintiff' s argument in support of this assertion consists entirely of the following statements:

> The medical evidence from Ms. Notter's treating and examining physicians can
> only reasonably support a finding that Ms. Notter's hypothalamic-pituitary dysfunction,
> immune system dysfunction, chemical sensitivities, allergies, sleep disorder, fatigue, and
> migraines are severe impairments, in that they have more than a minimal effect on her
> ability to work.  The ALJ's failure to do so is legal error which mandates reversal of the
> ALJ's decision.

Plaintiff's Opening Brief, p. 21.  Not surprisingly, considering some of the arguments plaintiff previously

made and which are addressed above, no specific citations to the record that may actually show this to be

the case are provided.  As such, the undersigned understandably cannot agree that plaintiff's assertion here

is the only reasonable one.  Nor will the undersigned make plaintiff's case for her by searching through the

record in an attempt to find such citations.  It is plaintiff's responsibility to present a properly argued and

supported claim to the Court, and her failure to do so dooms her assertion of error here.

III.    The ALJ's Step Three Findings

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's

impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P,

Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

1999).  If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled.

Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in

the Listings. Tacket, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20

C.F.R. § 404.1508.  It must be established by medical evidence "consisting of signs, symptoms, and

laboratory findings." Id.  An impairment meets a listed impairment "only when it manifests the specific

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs,

and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

1    impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

2            As noted above, the ALJ found that none of plaintiff's impairments met or equaled the criteria of

3    any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.  Plaintiff argues that the medical

4    evidence in the record, considered in its entirety, "can only reasonably support a finding" that she met or

5    equaled Listing 12.04. Plaintiff's Opening Brief, p. 22; see also 20 C.F.R. Pt. 404, App. 1, § 12.04.  Here,

6    the only support plaintiff provides for her argument is to state that the ALJ failed to adequately explain his

7    reasons for finding her impairments did not meet or equal the Listings.

8            It is true that an ALJ "must evaluate the relevant evidence before concluding that a claimant's

9    impairments do not meet or equal a listed impairment," and that a mere "boilerplate finding is insufficient to

10   support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th

11   Cir. 2001).  On the other hand, the ALJ need not "state why a claimant failed to satisfy every different

12   section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding

13   ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's

14   impairments did not meet or exceed Listings).  This is particularly true where the claimant has failed to set

15   forth any reasons as to why the Listing criteria have been met or equaled. Lewis, 236 F.3d at 514 (noting

16   claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal

17   a listed impairment).  Because plaintiff has set forth no such reasons, the undersigned accordingly finds no

18   error on the part of the ALJ here.

19   IV.    The ALJ Properly Assessed Plaintiff's Credibility

20           Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

21   639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

22   F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

23   based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

24   claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

25   as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

26   Cir. 2001).

27           To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

28   disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Plaintiff first argues the ALJ erred in discounting her credibility in part on her activities of daily living, stating that she should not be penalized for attempting to lead a normal life. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

With respect to plaintiff's activities of daily living, the ALJ found as follows:

> These [medical] reports suggest that the claimant has some limitations in functioning, but not to the point of disability. Other evidence supports that conclusion. The claimant said that she could do some household chores like beds, laundry, dishes, and cooking, but not if there was exposure to fragrances or fumes because of asthma. She had no difficulty using public transportation, driving about 30 minutes, and taking part in activities such as church. She visited with family and friends and did crafts such as embroidery, cross stitch and knitting. She attended group therapy thru BHR and attended class in the afternoon. She had no difficulty with personal care. She told Dr. Price that she attended a singles group and Weight Watchers, and ran errands (exhibit 15F:2).

Tr. 25. The undersigned finds the ALJ did not err in discounting plaintiff's credibility based on the above activities. These activities, which plaintiff does not contest she participated in, shows an ability to remain quite engaged with her life, even taking into consideration her chemical sensitivities. The undersigned thus finds the record reveals plaintiff is able to spend a substantial part of her day engaging in various activities and supports the ALJ's findings here. See Tr. 35-38, 124-25, 479, 482, 503, 508, 515.

The ALJ also discounted plaintiff credibility in part for the following reason:

> The claimant takes many prescription medications, which is a factor in her favor. But she is very inconsistent with them, often stopping or starting them without a doctor's instruction. She said that her medication caused side effects of depression, sleepiness, and jittery sensations, but that is not very credible. She may have some side effects, of course, but not to the severity she alleged. The record does not reflect persistent complaints of disabling side effects in talking to her treating doctors, despite the litany of complaints she mentioned to them.

Tr. 25. In challenging these findings, plaintiff argues she was not required to persistently complain about the known side effects of medications she had to take. Although there may be no such requirement per se, the ALJ's point was that while plaintiff complained of significant medication side of effects, the lack of persistent complaints in that regard simply did not support their claimed severity. To this extent, the ALJ's findings are not in error.

Plaintiff, furthermore, ignores the ALJ's other finding that she was "very inconsistent" in taking her prescribed medications. This too was a valid basis for discounting her credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking, or following prescribed course of, treatment, or finding that proffered reason is not believable, can cast doubt on sincerity of claimant's pain testimony).

The ALJ discounted plaintiff's credibility for the following reason as well:

> At the hearing, the claimant was not very credible and seemed to be somewhat manipulative. She is bright, but overly dramatic. For example, while discussing her asthma at the hearing, she dramatically pulled out her inhaler [sic] asked to stop while she dosed herself. Prior to that moment she had no evidence of shortness of breath, wheezing, or difficulty talking or breathing. Interestingly, at a [state agency] DDS interview the claimant was the same; she demonstrated some breathing difficulty and pulled out her inhaler during the interview; there were no other symptoms or limitations (exhibit 3E:2). These incidents are noted, in connection with the examination reports that show multiple asthma complaints with few if any objective findings (exhibits 2F:8; 7F:2, 6; 9F:7, 20[,] 41, 43; 11F:1; 21F:2, 8, 9, 45; 22F:1, 3, 5, 6). Her primary complaint at the hearing was asthma, but her pulmonary function tests show only mild impairments at most (exhibits 11F:4; 22F:3, 6).

Tr. 26. Plaintiff asserts that her use of her inhaler at the hearing was due to her asthma being exacerbated by stress, and that the ALJ was not qualified to diagnose or rule out her asthma based on his observations of her via a television monitor.[4] First, plaintiff's assertion that her behavior during the hearing was due to real

---

[4] Apparently, the hearing was "video-assisted." See Tr. 20.

1    medical need is just that, an assertion.  She offers no evidence that this was the case.

2            Second, an ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or

3    her testimony. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002); <u>Matney v. Sullivan</u>, 981 F.2d 1016,

4    1020 (9th Cir. 1992).  Inclusion of personal observations of the claimant in the ALJ's findings "does not

5    render the decision improper." <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986).  However, the ALJ

6    may not reject a claimant's subjective complaints "solely on the basis of" personal observations. SSR 95-5p,

7    1995 WL 670415 *2.  Here, contrary to plaintiff's assertion, the ALJ was not diagnosing her or ruling out a

8    diagnosis, but simply making a personal observation of her behavior.[5]

9            Plaintiff also argues that it was not a convincing reason for the ALJ to discount her credibility on the

10   basis of similar behavior she exhibited at the state agency interview, asserting that the fact that the state

11   agency interviewer did not report observing any other symptoms or limitations is irrelevant.  However, the

12   fact that plaintiff did act in a very similar manner during another interview concerning her application for

13   disability benefits is highly relevant.  It is further evidence that plaintiff may not always be entirely honest

14   about her symptoms and limitations, and may have engaged in prior deceptive behavior.  As such, the ALJ

15   did not err in considering this evidence as well.

16           Further supporting the ALJ's findings on these two issues is the fact that, as expressly noted by the

17   ALJ, the medical evidence in the record showed "multiple asthma complaints with few if any objective

18   findings," and at most "only mild impairments" shown on pulmonary function tests. Tr. 26.  Likewise, the

19   ALJ pointed out that while plaintiff had had "multiple ER visits," they resulted in "few objective findings."

20   <u>Id.</u>  Both of these findings were proper. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir.

21   1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear

22   and convincing requirement).  As such, this is an additional basis supporting the ALJ's determination that

23   plaintiff was not entirely credible.

24           The following reason for discounting plaintiff's credibility also was provided by the ALJ:

25           Substantial weight is given to the comments by Dr. [John] Brottem[, M.D.,] that the

26   _____

27          [5]Plaintiff's reliance on <u>Perminter v. Heckler</u>, 765 F.2d 870 (9th Cir. 1985), thus is misplaced.  In that case, the Ninth
     Circuit held that the ALJ improperly relied on his personal observations of the claimant to deny benefits, despite the contrary

28   objective evidence that supported the claimant's statements. <u>Id.</u> at 872 (condemning such reliance as "sit and squirm"
     jurisprudence).  Here,  however, the ALJ merely used his personal observations of plaintiff as one basis for discounting her
     credibility, and not for the purpose of denying her benefits.

claimant's fair amount of symptoms with an absence of findings suggests that her asthma was "a little overcalled" (exhibit 7F:2), and to the examination by Dr. [Austin] Lampert[, M.D.,] in May 2005 that was benign for pulmonary problems (exhibit 22F:4-5). Ultimately, the exaggeration of symptoms in light of the mild findings suggests an element of exaggeration, which in turn raises the possibility of malingering.

Tr. 26.  Plaintiff takes issue with the ALJ's raising of the possibility of malingering, noting that none of her treating or examining medical sources opined that she was malingering.  While it is true the record contains no affirmative evidence of malingering, the ALJ was not remiss in pointing out that there was a suggestion of an element of exaggeration, and that plaintiff's asthma-related complaints were not consistent with the objective medical evidence concerning her pulmonary issues.  Both of these reasons were proper bases for further discounting her credibility.

Plaintiff also challenges the ALJ on his statements in his decision that she "clearly exaggerates her physical condition" and has a "somewhat manipulative nature." Tr. 27.  Although the undersigned agrees that the evidence in the record does not clearly support the ALJ's conclusion that plaintiff was somewhat manipulative, as discussed above, the medical and other evidence in the record does support a finding that plaintiff exaggerated her physical symptoms and limitations.  On the other hand, the undersigned agrees with plaintiff that the ALJ's statement that her "concerns with getting [supplemental security income] SSI [benefits], despite the rather mild symptoms in the record," raised the possibility of secondary gain, is not supported by the evidence in the record. Tr. 25; see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may consider motivation and issue of secondary gain).  That is, simply seeking disability benefits does not in itself imply improper motives.

As can be seen, all but two of the reasons the ALJ gave for discounting plaintiff's credibility were proper.  In addition, the fact that some of the reasons for discounting plaintiff's credibility may have been found improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148.  As such, the undersigned rejects plaintiff's assertion that the ALJ failed to properly consider her testimony regarding her symptoms and limitations.

V.    The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

1    assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A

2    claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

3    his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus

4    is what the claimant "can still do despite his or her limitations." Id.

5          A claimant's residual functional capacity is the maximum amount of work the claimant is able to

6    perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work

7    must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those

8    limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a

9    claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

10   related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

11   medical or other evidence." Id. at *7.

12         Here, the ALJ assessed plaintiff with the following residual functional capacity:

13       [T]he claimant retains the residual functional capacity to lift and carry 10 pounds,
         stand/walk 4 hours in an 8-hour workday and sit for 6 hours in a workday.  That is the
14       capacity for sedentary work tasks.  She can occasionally stoop and climb stairs, but not
         ropes, ladders and scaffolds.  She should not be exposed to heights or hazards, dust,
15       fumes, odors, smoke, and other inhaled agents, and should avoid extremes of
         temperature.  She is capable of detailed but not complex tasks.
16
17   Tr. 27, 29.  Plaintiff argues that this assessment is improper due to the ALJ's errors in failing to properly

18   consider her own testimony, as well as the medical evidence provided by Dr. Regets, Dr. Wingate, Dr.

19   Trowbridge, Dr. Price, Dr. Ranheim, Dr. Graf, and Mr. Overton.  As discussed above, the ALJ did not err

20   in discounting plaintiff's credibility regarding her own pain and symptom testimony, or in evaluating the

21   opinions and findings of the above medical sources.  As such, the undersigned finds the ALJ did not err in

22   assessing plaintiff's residual functional capacity.

23   VI.   The ALJ Did Not Err in Finding Plaintiff Capable of Returning to Her Past Relevant Work

24         Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to

25   return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  At the hearing,

26   the ALJ posed a hypothetical question to the vocational expert, which included limitations substantially

27   similar to those contained in his assessment of plaintiff's residual functional capacity. Tr. 55.  In response to

28   that question, the vocational expert testified that plaintiff was capable of performing both her past data entry

     clerk and telemarketing jobs. Id.  Based on the vocational expert's testimony, the ALJ found plaintiff

1    capable of returning to those two jobs. Tr. 27, 29.

2           Plaintiff argues that because the ALJ erred in assessing plaintiff's residual functional capacity, his

3    step four determination was erroneous as well.  However, because, as discussed above, the ALJ did not err

4    in assessing plaintiff's residual functional capacity, he also did not err in posing the hypothetical question he

5    did, or in finding plaintiff to be capable to return to her past data entry clerk and telemarketer jobs based on

6    that residual functional capacity assessment and hypothetical question.  As such, the undersigned finds

7    plaintiff's argument to be without merit on this issue.

8    VII.    The ALJ's Step Five Analysis

9           If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

10   process the ALJ must show there are a significant number of jobs in the national economy the claimant is

11   able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The

12   ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's

13   Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240

14   F.3d 1157, 1162 (9th Cir. 2000).

15          An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

16   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

17   1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

18   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

19   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

20   the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

21   description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

22   2001).

23          In addition to his step four finding discussed above, the ALJ found in the alternative that plaintiff

24   also was capable of performing other jobs existing in significant numbers in the national economy. Tr. 27-

25   29.  The ALJ based this finding on the hypothetical question noted above he posed to the vocational expert

26   and on the testimony provided by the vocational expert in response thereto. Tr. 28, 55.  Plaintiff argues that

27   in light of the erroneous hypothetical question posed by the ALJ, the ALJ's step five determination was not

28   based on an accurate description of all of plaintiff's functional limitations.  For the same reasons discussed

above, the undersigned disagrees and finds no error here.

The undersigned further rejects plaintiff's assertion that the evidence from her physicians, as well as from her own testimony, supports a finding that her physical and mental impairments, considered in combination, prevent her from performing any work.  Again, as discussed above, the ALJ did not err in evaluating the medical evidence in the record concerning her physical and mental impairments or in finding her to be not fully credible regarding her testimony.

Similarly, the undersigned also rejects plaintiff's argument that she should be found incapable of performing any work based on a hypothetical question posed to the vocational expert assuming her to be fully credible, and the vocational expert's response thereto. See Tr. 55-56.  Again, as discussed above, the ALJ did not err in finding plaintiff not fully credible regarding her symptoms and limitations.  The record also does not clearly show plaintiff to be incapable of completing a normal workday one day a week, given ALJ's proper treatment of her testimony and the medical evidence in the record.  For the same reason, the undersigned rejects as well plaintiff's assertion that she should be found disabled based on the vocational expert's testimony finding her unable to maintain employment given this limitation. See Tr. 57.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 24, 2007**, as noted in the caption.

DATED this 30th day of July, 2007.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 22